IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| BRIAN O'CONNOR<br>Administrator for the estate<br>of Hyo Jung kim, deceased,<br><br>    Plaintiff,<br><br><br>v.<br><br><br>FAIRFAX TAXI, INC., et al.<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 1:23-cv-01756<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM

THIS MATTER comes before the Court on Defendant Evelyn Kenin's (administrator of the estate of Amoah Gyimah, deceased) Motion for Summary Judgment.

This case arises from a car accident, which occurred on April 29, 2019, on the George Washington ("GW") Parkway. That afternoon, Plaintiffs Hyo Jung Kim and Sung-Chul Jung requested a taxicab from Defendant Fairfax Taxi. Defendant Amoah Gyimah drove the taxicab dispatched to pick up Plaintiffs. While driving northbound on the parkway with Plaintiffs, Gyimah collided head-on with a vehicle traveling southbound. The collision killed Gyimah and Kim, and Jung sustained serious injuries. Dr. Jung, the only survivor, has no memory of the crash and there are no other witnesses to the crash. Plaintiffs filed suit against Fairfax Taxi Inc., Evelyn

1

Kenin (administrator of the estate of Amoah Gyimah, deceased), and Red Top Cab, LLC. Though filed as separate cases, Plaintiffs' claims are identical.

Plaintiffs first pursued this cause of action in Fairfax County Circuit Court. That case concluded when Plaintiffs took a nonsuit on July 13, 2023. On June 28, 2024, this Court granted in part and denied in part Defendants' Motion for Judgment on the Pleadings. On July 02, 2024, Plaintiffs filed a Motion for Reconsideration, which was subsequently denied by this Court on July 26, 2024. On August 02, 2024, Plaintiffs filed a Motion for Leave to Appeal the June 28, 2024, ruling. That too was denied. And on September 12, 2024, Plaintiffs moved for reconsideration of that denial, which this Court also denied. Leaving the only remaining issue as whether Amoah Gyimah was negligent leading up to and during the accident. Now, Gyimah's estate has filed this Motion for Summary Judgment.

Summary judgment is required when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. While the Court views the facts and inferences drawn in the light most favorable to the nonmoving party, the party opposing the motion for summary judgment must put forth specific facts showing a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The burden of the moving party may be

discharged by simply pointing out "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Plaintiff alleges that Gyimah was negligent by (1) "exceed[ing] the safe speed limit for the conditions then and there existing; (2) looking at using, and/or typing on an electronic cell phone or similar device just before the collision, (3) failing to maintain his vehicle in the correct lane of traffic; [and] (4) failing to recognize the risk of collision from a vehicle driven by Eric S. Jewett." Each theory has the same deficiency: there is no evidence.

First, there are no witnesses to the crash. Gyimah and Kim both died before they had an opportunity to testify. Plaintiff Jung is the only surviving witness. However, Jung has no memory of the crash. He remembers being in the taxi; then, waking up in the hospital. And no witnesses saw the crash. In short, Plaintiff is unable to identify any witness testimony that Gyimah acted negligently. Testimony Plaintiff relies on—such as Jung, John McDonald, Timothy Bracken, and Roger Oswalt—all falls short. Jung testified that Gyimah "spoke to someone, somebody, or if he had a phone call, or he spoke by himself or spoke to me. I don't realize still now." Jung does not affirmatively state Gyimah was talking on his cell phone. Even if he did, Jung cannot identify when Gyimah

3

was speaking, only that it was sometime before the crash. But he does not know if it was ten minutes before the crash or ten seconds.

Similarly, McDonald's testimony does not support Plaintiff's allegations. McDonald, a retired police captain, testified he was driving southbound on the GW Parkway when he heard the crash. McDonald testified that he did not hear skidding noises, which he would expect to hear if a car braked quickly. Plaintiff argues this shows Gyimah did not attempt to stop to avoid the crash. But McDonald did not see the crash. In fact, he testified that he did not know who crossed over the double yellow line. McDonald only testified that he did not hear skidding noises. A lack of skidding noises is not evidence of which driver caused the accident, or that Gyimah was negligent by not avoiding the crash.

Moreover, Roger Oswalt could also not state who crossed the double yellow line or make any allegations that Gyimah was driving negligently. Oswalt testified he was a "good hundred yards" behind the crash, and that he did not see the crash. Oswalt's testimony that prior to the crash "it appeared that both cars were very close to the center" does not suggest who, if anyone, was negligent. In addition, Timothy Bracken, a former military officer who was one of the first people to arrive after the crash, testified he did not see the crash. Bracken testified he saw a phone in Gyimah's lap when he came upon the crash. But a phone on Gyimah's leg after a violent car crash is not evidence Gyimah was using the phone

4

before the accident. Bracken never testified that Gyimah engaged in any negligent behavior because Bracken, like every other witness, did not see the crash.

Second, there is no evidence that Gyimah would have been able to avoid the crash. It is undisputed that the vehicles involved in this collision were traveling in opposite directions in a posted speed limit zone of 45 mph, creating a lawful closing speed of 90 mph at the time of the collision. Va Code § 46.2-880 directs "[a]ll courts [to] take notice . . . of speed and stopping distances of motor vehicles." A car traveling 90 mph create a driver perception-reaction time of 198 feet, and a "total stopping distance of 584" feet for automobiles. Id. Plaintiffs identify no evidence that there was 198 feet of room for Gyimah to avoid the crash. Plaintiff attempts to overcome their deficiency in two ways: expert testimony and a park police investigation. Both fail.

To begin, the Court ruled that the expert testimony was both untimely filed and excluded on the merits. See Order Denying Motion for Leave to File Attachments to Expert Designation Out of Time. Thus, it cannot be relied on here. Next, Plaintiff argues that the U.S. Park Police investigation shows there were no tire marks on the road and photographs showing the cars hit head-to-head are evidence that "Gyimah made no attempt to avoid the collision by braking at the last minute." That too fails. A lack of tire marks is not evidence Gyimah was negligent. And photographic evidence

5

that a head-on crash happened does not show *how* the crash happened or that Gyimah was negligent.

Finally, Plaintiff purports that the jury could find both parties liable and Gyimah to be a joint tortfeasor. This too fails. Even under a theory of joint tortfeasors, Plaintiff must be able to show that there is a genuine dispute of material fact to survive summary judgment. He cannot. As stated above, there are no eyewitnesses who can testify that Gyimah was negligent or could have avoided the crash; there is no admissible expert testimony that Gyimah was negligent; and the police reports only show that an accident happened, not which driver caused the accident. In sum, Plaintiff has failed to provide evidence that there is a genuine dispute of material fact for the jury to decide.

For the forgoing reasons, Defendant Evelyn Kenin's (administrator of the estate of Amoah Gyimah, deceased) Motion for Summary Judgment should be GRANTED; this case should be DISMISSED.

An appropriate Order shall issue.

Claude M. Hilton
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
May _19_, 2025

6